**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| THOUSAND OAKS BARREL CO., LLC<br>a Virginia limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>THE PARTNERSHIPS, COMPANIES, and<br>UNINCORPORATED ASSOCIATIONS<br>IDENTIFIED ON SCHEDULE A,<br><br>Defendants. | Civil Action No.: |

### COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Thousand Oaks Barrel Co., LLC ("Thousand Oaks"), by its undersigned counsel, alleges as follows for its Complaint against Defendants in Schedule "A."

### THE NATURE OF THIS ACTION

1.    Thousand Oaks brings this action against Defendants pursuant to 35 U.S.C. §101 et. seq. and §§271, 281, 283, 284, & 285 inclusive, for infringement of one or more claims of U.S. Patent No. 11,744,256 B2 (the '256 Patent") titled "Device and method for Imparting Smoked Flavors to Beverages and Foodstuffs". The '256 Patent protects the products of Plaintiff that are used to add smokey flavors to cocktails and other beverages, and foods. A true and correct copy of the '256 Patent is attached as Exhibit A.

2.    Thousand Oaks also brings this action against Defendants pursuant to 15 U.S.C. § 1125(a); Sec. 43(a) of the Lanham Act for federal trade dress infringement.

### THE PARTIES

1

3.      Thousand Oaks Barrel Co., LLC is a Virginia Limited Liability Company that maintains a principal place of business at 9113 Euclid Avenue, Manassas, VA 20110. Plaintiff is the exclusive licensee of the '256 Patent with the right to enforce its claims.

4.      Defendants identified in Schedule "A" are all believed to be individuals, companies, and unincorporated business associations who, upon information and belief, reside in both domestic and foreign jurisdictions.  Defendants sell Accused Products on Amazon.com, Ebay.com, Etsy.com, and other online retail platforms.  Since Amazon.com and others do not require the true names and contact information of sellers to be posted publicly, and sellers may publicly use fictitious names, the public seller names used on online retail stores are unreliable. The true names, identities, and addresses of Defendants are currently unknown.

5.      Defendants conduct their operations through fully interactive commercial websites hosted on various Amazon.com and other platform storefront webpages ("Infringing Webstores"). Each Defendant targets consumers in the United States, including the State of Virginia, and has offered to sell and, on information and belief, has sold and continues to sell products ("Accused Products") that practice the claims of the Patents-in-Suit to consumers within the United States, including the State of Virginia and Eastern District of Virginia.  For example, the Accused Products may be purchased by Virginia residents using the Amazon "Prime" online order system and delivered by an Amazon Prime delivery vehicle in this district.

6.      Defendants from outside the United States have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

7.      Through their operation of the Infringing Webstores, Defendants are directly and personally engaging in the importation, offer for sale, and sale of Accused Products as alleged, oftentimes as partners and/or suppliers. Upon information and belief, Defendants on

Amazon.com may intentionally or otherwise conceal their identities and the full scope of their infringing operations in an effort to deter Plaintiff from learning Defendants' true identities and the exact interworking of Defendants' infringing acts. Once their identities become known via ordered disclosure, Plaintiff will promptly amend this Complaint to identify them.

## JURISDICTION AND VENUE

8.      This is an action for patent infringement arising under the laws of the United States, 35 U.S.C. §271 *et seq*. and for federal trade dress infringement arising under the laws of 15 U.S.C. § 1125(a); Sec. 43(a) of the Lanham Act.

9.      This Court has subject matter jurisdiction over this action pursuant to 35 U.S.C. §§271, 281 and 28 U.S.C. §§1331 and 1338(a), federal question, and 28 U.S.C. §1332 diversity jurisdiction.

10.     This Court has personal jurisdiction over U.S. based Defendants in that they transact business in the State of Virginia and in the Eastern District of Virginia.

11.     This Court has Personal jurisdiction over non-U.S. based Defendants because they have supplied their products into this district and under the Federal Long Arm Rule, FRCP 4(k)(2)

(k)Territorial Limits of Effective Service (2) *Federal Claim Outside State-Court Jurisdiction.* For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:

(A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and

(B) exercising jurisdiction is consistent with the United States Constitution and laws

12.     Venue is proper in this District pursuant to §§1391(b), 1391(c) and 1400(b) in that the U.S. based Defendants are entities or individuals subject to personal jurisdiction in this District. Venue is also proper in this District because a substantial part of the events or omissions

giving rise to the claims occurred in this District and Defendants directly target business activities towards consumers in the State of Virginia. Defendants are doing business in this judicial district and have committed acts of infringement in this District.

13.     Venue is proper in this Court against non-U.S. based Defendants under 28 U.S.C. § 1391 (c)(3) and 28 U.S.C. § 1400(b)  based on information set forth herein, which is hereby repeated and incorporated by reference. For purposes of venue regarding cases against foreign corporations, general federal statutes are applicable. This Court is a proper venue for a case against non-U.S. based Defendants in any judicial district in any state to which it is subject to personal jurisdiction. *See Brunette Mach. Works, Ltd. v. Kockum Indus., Inc.,* 406 U.S. 706, 92 S. Ct. 1936, 32 L. Ed. 2d 428 (1972); *See also TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 581 U.S. 258, 137 S. Ct. 1514, 197 L. Ed. 2d 816 (2017) (Declining to expand limitation of venue statutes related to domestic corporations to foreign corporations).

14.     This Court has personal jurisdiction over Defendants and venue is proper pursuant to Va. Code Ann. § 8.01-328.1 (1950). Personal jurisdiction exists over Defendants because Defendants have minimum contacts with this forum as a result of business regularly conducted within the Commonwealth of Virginia and within this district, and, on information and belief, specifically as a result of, at least, committing the tort of patent infringement within Virginia and this District. This Court has personal jurisdiction over Defendants, in part, because Defendants do continuous and systematic business in this District, including by providing Accused Products and services to the residents of the Eastern District of Virginia through fully interactive websites that allow Accused Products to be purchased by Virginia residents and shipped to addresses in Virginia. Defendants knew the Accused Products would be used within this District, and have solicited business from the residents of the Eastern District of Virginia using the Amazon.com e-

4

commerce platform.

## BACKGROUND AND GENERAL ALLEGATIONS

15.     Plaintiff is the manufacturer of the FOGHAT product lines, a unique product that allows professional bartenders and home users alike to add flavor to cocktails and foods via sources of smoke. Thousand Oaks manufactures, markets, sells and distributes various products under a trademark for "Foghat Cocktail Smoker," domestically and internationally, including within the Eastern District of Virginia (collectively, "Plaintiff's Products") that are commercial embodiments made under the exclusively licensed patent identified in Paragraph 1, above. Defendants have flooded the online market with sales of Accused Products in violation of Plaintiff's intellectual property rights and have irreparably damaged, and are continuing to irreparably damage, Plaintiff.

16.     Plaintiff's Foghat Cocktail Smoker Products are recognized around the world as a quality product used to add smoke flavor to cocktails and other beverages. As detailed below, Plaintiff has been selling its products in interstate and foreign commerce, including commerce in Virginia and the Eastern District of Virginia.

17.     Plaintiff maintains quality control standards for all of its products sold under the Foghat brand. Genuine Plaintiff's Products are distributed through a network of licensees, distributors and retailers, via reseller webstores and through Plaintiff's own website in Virginia, www.1000oaksbarrel.com. Prior to the flood of Accused Products entering the market, sales of Plaintiff's Products via legitimate webstores represented a significant portion of Plaintiff's business. Plaintiff has expended substantial time, money, and other resources developing, advertising, and otherwise promoting its products sold under the '256 Patent and the Foghat Trade Dress.

18.     Upon information and belief, many of the Accused Products are manufactured by factories based in China and sold wholesale either directly or through China-based e-commerce Internet websites. For example, sellers on Amazon.com purchase Accused Products in bulk from the factory or the Chinese e-commerce sites to sell on Infringing Webstores. In 2023, Plaintiff's chief executive officer has personally met a Chinese factory owner at a convention in Chicago, IL, who was offering for sale products at wholesale that were manufactured at the factory in China that would fall under the claims of the '256 Patent and violate Plaintiff's trade dress rights.

19.     On September 5, 2023, United States Patent No. 11,744,256, entitled "Device and Method for Imparting Smoked Flavors to Beverages and Foodstuffs" was duly and legally issued by the USPTO. The '256 Patent claims patent-eligible subject matter and is valid and enforceable.   Soak Limited, London, Great Britain, is the exclusive owner by assignment. Plaintiff is the exclusive licensee of the '256 Patent including the right to bring this suit for injunction and damages, and including the right to sue and recover all past, present, and future damages for infringement of the '256 Patent.   Defendants are not licensed to the '256 Patent, either expressly or implicitly, nor do they enjoy or benefit from any rights in or to the '256 Patent whatsoever. A true and correct copy of the '256 Patent is attached hereto as **Exhibit A**.

20.     The '256 Patent is presumed valid under 35 U.S.C. § 282.

### THE PATENT

21.     The claims of the '256 Patent are directed to "a device for imparting smoked flavors to beverages and foodstuffs."  The '256 Patent contains nineteen claims directed to the device, where claims 1, 9, and 10 are independent claims. Claim 1 of the '256 Patent recites:

> 1. A device for imparting smoked flavors to beverages and foodstuffs, comprising:
> a base having a fuel chamber portion at its upper end and

a conduit portion at its lower end, the fuel chamber portion comprising an upper wall portion defining a perimeter edge of the fuel chamber portion and a floor defining a bottom end, the floor extending from the upper wall portion to an opening in the floor,

wherein the fuel chamber portion is oriented to hold fuel, and

wherein the conduit portion is disposed below the floor and comprises a channel through the conduit portion so that, when the fuel in the fuel chamber portion is ignited, the channel facilitates flow of smoke down-ward from the fuel chamber portion through at least one aperture that extends from the channel space through a wall of the conduit portion.

## INFRINGEMENT

22.    Defendants manufacture, import, offer to sell, and sell various smoker devices for imparting smoked flavors to cocktail beverages and foods.  These devices are sold on the Amazon.com platform and other Internet platforms using Infringing Webstores.

23.    Doe Defendants 1-161 in Schedule "A" have, under 35 U.S.C. §271(a), directly infringed, and continue to directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the '256 Patent by making, using, testing, selling, offering for sale and/or importing into the United States the Accused Products.

24.    Defendants also indirectly infringe the '256 Patent by actively inducing the direct infringement by third parties under 35 U.S.C. §271(b). Defendant has knowingly and intentionally actively aided, abetted and induced others to directly infringe at least one claim of the '256 Patent, including their customers throughout the United States. Defendants continue to induce infringement of the '256 Patent.

25.    Plaintiff has conducted a detailed analysis, establishing and confirming that Defendants' Accused Products directly infringe claims of the '256 Patent.

26.    Attached as Exhibit B to the Complaint is a claim chart demonstrating the

correspondence of the operation of the accused products with elements of claim 1 of the '256 Patent.

27.     Defendants and their customers have continued infringement.

28.      The Accused Products satisfy the elements of the asserted claims of the '256 Patent.   An exemplary Accused Product from Defendant Doe#68 (ASIN B0BQRG43B6) is shown below with reference to claim 1:



a base having a fuel chamber portion and a
conduit portion

fuel chamber
portion

base

conduit portion



the fuel chamber portion
comprising
an upper wall portion
defining a perimeter edge of
the fuel chamber portion

and a floor defining a
bottom end, the floor
extending from the upper
wall portion to an opening
in the floor



9

**wherein the fuel chamber portion is oriented to hold fuel**



**wherein the conduit portion is disposed below the floor and comprises a channel through the conduit portion**

**so that, when the fuel in the fuel chamber portion is ignited,**

**the channel facilitates flow of smoke downward from the fuel chamber portion through at least one aperture that extends from the channel space through a wall of the conduit portion.**

**the channel facilitates flow of smoke downward from the fuel chamber portion through at least one aperture that extends from the channel space through a wall of the conduit portion.**



29.     Plaintiff is the exclusive licensee of the '256 Patent with the right to enforce the '256 Patent.

30.     Defendants have infringed, and continue to infringe, at least claims 1 - 19 of the '256 Patent under 35 U.S.C. § 271(a) and/or (b), by (a) making, using, offering to sell, selling and/or importing into the United States, devices for imparting smoked flavors to beverages and foodstuffs, that infringe the asserted claims in the United States, or (b) by inducing others to use the Accused Products and/or sell the Accused Products in the United States. Defendants continue to manufacture, use, offer to sell, sell and import Accused Products. The Accused Products are also being used to infringe.  Defendants continue to sell Accused Products inducing infringement by others and also continue to perform infringing activity by using the claimed devices in the United States.

31.     The Accused Products are infringing devices and thus directly infringe '256 Patent claims 1 – 19. The devices include a base having a fuel chamber portion and conduit portion with a  channel to an aperture, where when the fuel in the fuel chamber portion is ignited, the channel facilitates flow of smoke downward from the fuel chamber portion through the aperture and thus directly, and indirectly by inducement, infringe claims 1-19 of the '256 Patent.

32.     The '256 Patent is also infringed under 35 USC § 271(a) when an accused product is "used" by Defendant to impart smoked flavors to beverages and foodstuffs; the '256 Patent is infringed under 35 USC § 271(b) when Defendants "induce" others to use the Accused Products to impart smoked flavors to beverages and foodstuffs.

33.     Upon information and belief, Defendant has directly infringed one or more of claims of the '256 Patent under 35 USC §271(a):

> "(a) Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent.

by engaging in accused activity including making, using, offering to sell, selling and importing Accused Products in the United States. Defendants continue to infringe claims of the '256 Patent.

34.     Upon information and belief, Defendants have indirectly infringed one or more of the claims of the '256 Patent under 35 USC §271(b):

> (b) Whoever actively induces infringement of a patent shall be liable as an infringer.

by providing accused products, with instructions, which are used for imparting smoked flavors to beverages and foodstuffs, thereby inducing others to use the Accused Products.

35.     Defendants do not have a license or authority to use the '256 Patent.

36.     Plaintiff has marked its smoker device products with notices of the '256 Patent. Upon information and belief, Defendants have no good faith defense to Plaintiff's infringement allegations.

37.     As a result of Defendants' infringement of the '256 Patent, Plaintiff has suffered and will continue to suffer damages in an amount not yet determined, of at least a reasonable royalty.

38.     Defendants, without authorization or license from Plaintiff, continue to infringe the claims of the '256 Patent in connection with the advertisement, offer for sale, and sale of the Accused Products, through, inter alia, the Internet. Each Infringing Webstore offers shipping to the United States, including Virginia, and, on information and belief, each Defendant has sold Accused Products into the United States, including Virginia. The Defendants are continuing to

12

offer to sell and sell Accused Products at least via Amazon.com.

39.     Defendants have been willfully infringing the Patents-in-Suit since at least as early as they became aware of the Patents-in-Suit. Upon information and belief, Defendants have no good faith defense to Plaintiff's infringement allegations and have refused to cease selling products or to engage in further attempts to reach a business resolution. Instead, Defendants have intentionally continued their knowing infringement.

40.     Many sellers on Amazon.com go to great lengths to conceal their true identities and often use multiple fictitious names and addresses to register and operate the Infringing Webstores. Upon information and belief, Defendants regularly create new Webstores on the Amazon.com platform using the identities listed in Schedule "A" to the Complaint, as well as other unknown fictitious names and addresses. Such registration patterns are one of many common tactics used by the Defendants to conceal their identities and the full scope and interworking of their operations and to prevent the Infringing Webstores from being disabled.

41.     Upon information and belief, Defendants will continue to register or acquire listings for the purpose of selling Accused Products that infringe upon the '256 Patent unless preliminarily and permanently enjoined.

42.     Plaintiff has no adequate remedy at law.

**THE TRADE DRESS**

43.     Thousand Oaks' Foghat smoker devices packaged with wood chips and a torch bearing the Foghat Trade Dress have come to be known by the purchasing public throughout the United States as products of the highest quality.  As a result, the Foghat Trade Dress, together with the goodwill associated with it, are of inestimable value to Thousand Oaks.

44.     The Foghat trade dress is non-functional, and inherently distinctive, or has acquired secondary meaning, and serves to identify and indicate the source of Plaintiff's goods to the consuming public.  Through Thousand Oaks' extensive use and promotion of the Foghat Trade Dress, Thousand Oaks distinguishes its products from the products of other businesses and source and origin of Thousand Oaks' products. Member of the public have become familiar with Thousand Oaks' Foghat Trade Dress, and have come to recognize and associate it exclusively with Thousand Oaks. Thousand Oaks has acquired a valuable reputation and goodwill among the public as a result of such association.

45.     Since its first advertisement, offer, and sale of the Foghat product in or around November 2020, Thousand Oaks has continuously used the Foghat trade dress, which Thousand Oaks has prominently displayed and used in advertising and marketing of its products in print advertising and brochures, on multiple e-commerce websites on the Internet, and other promotional and trade show marketing materials.

46.     Thousand Oaks' Foghat product line has been a huge commercial success, selling tens of thousands of products directly or through authorized resellers nationwide. The commercial success of the product line has resulted in widespread recognition of Thousand Oaks as the source of the Foghat Trade Dress.

47.     The Thousand Oaks Foghat Trade Dress comprises packaging of a smoker device, storage tin with wood chips, and optionally a torch set up in a unique and attractive configuration. One example of the Foghat Drade Dress from Amazon is shown below:





48.     Competitors to Thousand Oaks and/or sellers on Infringing Webstores, namely Amazom.com, have, without authorization, unlawfully directly and deliberately copied the Foghat Trade Dress in interstate commerce, thereby reinforcing the recognized commercial success and secondary meaning of the Foghat Trade Dress.  As one example, an Amazon seller's

15

Infringing Webstore, copying the Foghat Trade Dress, is shown below for Defendant Doe#143:





49.     Upon information and belief, Defendants will continue to register or acquire listings for the purpose of selling Accused Products that infringe upon the Foghat Trade Dress unless preliminarily and permanently enjoined.

50.     Plaintiff has no adequate remedy at law.

16

**COUNT ONE**
**INFRINGEMENT OF UNITED STATES Patent No. 11,744,256**
**(35 U.S.C. § 271)**

51.     The allegations of each of the paragraphs above are hereby re-alleged and incorporated herein by reference.

52.     Defendants have infringed, and continue to directly infringe, at least claims 1-19 of the '256 Patent under 35 U.S.C. § 271(a), by making, using, offering to sell, selling and importing the Accused Products in the United States.

53.     Upon information and belief, Defendants have indirectly infringed one or more of the claims of the '256 Patent under 35 USC §271(b) by providing Accused Products, with instructions, which are used to impart smoky flavors to beverages and foodstuffs, thereby inducing others to use the Accused Products in an infringing manner.

54.     As a result of Defendants' infringement of the '256 Patent, Plaintiff has suffered and will continue to suffer damages in an amount not yet determined, of at least a reasonable royalty.

55.     Defendants will continue to register or acquire listings for the purpose of selling Accused Products that infringe upon the '256 Patent unless preliminarily and permanently enjoined.

56.     The Defendants have infringed the '256 Patent through the aforesaid acts and will continue to do so unless enjoined by this Court. Defendants' wrongful conduct have caused Plaintiff to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from making, using, selling, offering for sale, and importing the patented invention. Plaintiff is entitled to injunctive relief pursuant to 35 U.S.C. § 283.

## COUNT TWO
## FEDERAL TRADE DRESS INFRINGEMENT
### (15 U.S.C. § 1125(a); Sec. 43(a) of the Lanham Act)

57.     The allegations of each of the paragraphs above are hereby re-alleged and incorporated herein by reference.

58.     Thousand Oaks owns the rights to the trade dress for the Foghat product packaging and has standing to maintain an action for trademark infringement under the Trademark Statute 15 U.S.C.  § 1114.

59.     Thousand Oaks has continuously used its Foghat Trade Dress in Virginia commerce and interstate commerce since its first dates of use, since at least November 2020, and before the formation and sale of the Defendants' Accused Products and Infringing Webstores.

60.     The Foghat Trade Dress is distinctive and/or at least has acquired secondary meaning.

61.     Defendants are and at the time of their actions complained of herein were actually aware that Thousand Oaks is the creator, user, and owner of the Foghat Trade Dress.

62.     Defendants intentionally and knowingly used in commerce the Foghat Trade Dress, by offering, advertising, promoting, retailing, selling, and distributing similar or the same products, albeit knock-off products, with or using the Foghat Trade Dress, knowing such acts would create a likelihood of confusion among consumers and others, and caused such goods to enter into interstate commerce.

63.     Defendants directly and intentionally reproduced, copied, and/or colorably imitated the Foghat Trade Dress and applied such reproductions, copies, or colorable imitations to labels, signs, prints, packages, website pages, products, and/or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, and/or

18

advertising of Defendants' goods.

64.    The Defendants' unauthorized use of the Foghat Trade Dress infringes on Thousand Oaks' rights in its Trade Dress and has and will continue to have the effect of causing confusion, initial interest confusion, reverse confusion, mistake, or deception as to the source and origin of Defendants' products to deceive the public by passing off Defendants' products as being manufactured, sponsored, or otherwise approved by or connected with Thousand Oaks.

65.    Defendants did not and failed to obtain the consent or authorization of Thousand Oaks as the owner of the Foghat Trade Dress to deal in and commercially distribute market and sell products bearing the Foghat Trade Dress, or use the Foghat trade dress in confusingly similar manners, in commerce.

66.    Thousand Oaks' use of the Foghat Trade Dress was well before the first offer for sale of the Defendants' products.

67.    The Defendants' egregious and intentional use and/or sale of items bearing or using trade dress confusingly similar to the Foghat Trade Dress is likely to cause confusion, or to cause mistake, or to deceive, mislead, betray, and defraud customers who believe that Defendants' items are authentic products manufactured by Thousand Oaks.

68.    The Defendants' acts have been committed with knowledge of Thousand Oaks' exclusive rights and goodwill in its Trade Dress, as well as with bad faith and the intent to cause confusion or to cause mistake and to deceive.

69.    The Defendants' acts have caused Thousand Oaks to lose control over the reputation and goodwill associated with the Foghat Trade Dress.  The Defendants' acts have damaged Thousand Oaks' business reputation and have impaired, blurred, and tarnished Thousand Oaks' goodwill in the Foghat Trade Dress.

70.     Thousand Oaks has suffered damages and the Defendants have obtained profits and/or unjust enrichment as a result of the Defendants' wrongful conduct.

71.     Thousand Oaks has suffered and will continue to suffer substantial and irreparable injury, loss and damage to its rights in and to the Foghat Trade Dress and the goodwill associated therewith, for which it has no adequate remedy at law; thus Thousand Oaks requests injunctive relief.

72.     The Defendants' continued and knowing use of the Foghat Trade Dress without Thousand Oaks' consent or authorization constitutes intentional infringement of Thousand Oaks' Trade Dress in violation of §32 of the Lanham Act, 15 U.S.C. § 1114.  Based on the intentional infringement and the Defendants' acts described above, Thousand Oaks is entitled to injunctive relief as well as monetary damages, and other remedies provided by §§ 1116, 1117, and 1118, including the Defendants' profits, treble damages, prejudgment interest, and attorney's fees.

73.     The balance of hardships favors Thousand Oaks.

74.     Preventing use by Defendants of the Foghat Trade Dress is in the public interest.


**PRAYER FOR RELIEF**

A.  For a judgment declaring that Defendants have infringed the '256 Patent;

B.  For a judgment declaring that Defendants' infringement of the '256 Patent has been willful;

C.  For a grant of a preliminary and permanent injunction pursuant to 35 U.S.C. §283, enjoining the Defendant from further acts of infringement;

D. For a judgment awarding Plaintiff compensatory damages as a result of Defendants' infringement sufficient to reasonably and entirely compensate Plaintiff for infringement of the '256 Patent in an amount to be determined at trial;

E. For a judgment and order awarding a compulsory ongoing royalty;

F. For a judgment declaring that Defendant's infringement was willful and for enhancement of damages in accordance with 35 U.S.C. § 284;

G. That Defendants, their officers, agents, servants, employees, attorneys, confederates, and all persons in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

    (i)    using the Plaintiff's Trade Dress or products made under the or Patents-in-Suit, or any reproduction, counterfeit, copy, or colorable imitation of the Plaintiff's Trade Dress or products under the Patents-in-Suit in connection with the distribution, advertising, offer for sale, and/or sale of merchandise not the genuine products of the Plaintiff;

    (ii)    passing off, inducing, or enabling others to sell or pass off any Counterfeit Products as genuine products made and/or sold by the Plaintiff;

    (iii)    committing any acts calculated to cause consumers to believe that Defendants' Products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

    (iv)    further infringing the Plaintiff's Patents-in-Suit or Trade Dress and damaging Plaintiff's goodwill;

    (v)    competing unfairly with Plaintiff in any manner;

(vi)  shipping, delivering, holding for sale, distributing, returning, transferring or otherwise moving, storing, or disposing of in any manner products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and that bear the Designs or Marks or any reproductions, counterfeit copies, or colorable imitations thereof;

(vii)  using, linking to, transferring, selling, exercising control over, or otherwise owning or operating the Infringing Webstores, listings, or any other domain name that is being used to sell or is the means by which Defendants could continue to sell Products violating Thousand Oaks' Trade Dress or infringing the Patents-in-Suit;

H.  For such other relief to which Plaintiff is entitled under the applicable United States laws and regulations or as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to the Federal Rules of Civil Procedure Rule 38(b), Plaintiff hereby demands trial by jury as to all claims in this litigation.

Respectfully submitted,
WHITESTONE LAW PLLC
by Counsel

   /s/   Kendal M. Sheets
By:  Ken Sheets
Virginia bar number 44537
WHITESTONE LAW
1850 Towers Crescent Plaza, #550
Tysons, Virginia 22182
Phone: 703-489-8937
Fax: (703) 890-9418
ksheets@whitestone.law
ksheets@sheetspatent.com
Attorney for Thousand Oaks Barrel
Co., LLC