**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| THOUSAND OAKS BARREL CO., LLC, a Virginia limited liability company, | **Case No. 1:23-cv-01563-MSN-LRV** |
| Plaintiff, | |
| v. | |
| THE PARTNERSHIPS, COMPANIES, and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A, | |
| Defendants. | |

**DEFENDANT GWSK'S MEMORANDUM
OF LAW IN SUPPORT OF EMERGENCY MOTION TO
DISSOLVE THE TEMPORARY RESTRAINING ORDER**

Defendant Guizhou Wei Shi Ke Ji You Xian Gong Si ("GWSK") dba Kovize (Defendant No. 59 on Schedule A to the Complaint) submits this Memorandum of Law in Support of its Emergency Motion to Dissolve the Temporary Restraining Order against GWSK (the "Motion").

## I.      INTRODUCTION

To prove patent infringement, a patent owner must demonstrate that an accused product satisfies each and every requirement of a patent claim, either literally or under the doctrine of equivalents. And in the context of a temporary restraining order or a preliminary injunction, a patent owner must establish (1) a likelihood of success, *i.e.*, that there are ***no substantial questions*** as to infringement or validity of the patent, (2) that the patent owner will suffer irreparable harm absent the injunctive relief, (3) that the balance of the hardships favors the patent owner rather than the defendant, and (4) that the public interest favors issuance of injunctive relief.

In this case, Defendant GWSK's product does not satisfy all of the requirements of the patent claim asserted by Plaintiff (claim 1 of U.S. Patent No. 11,744,256 ("the '256 Patent")), so there is no infringement. Moreover, it is apparent that claim 1 is invalid. At the very least, there are **substantial questions** as to infringement and/or validity, making interlocutory injunctive relief improper. Moreover, Plaintiff has not demonstrated irreparable harm with respect to Defendant GWSK and has ignored the harm being suffered by Defendant GWSK, instead making sweeping generalizations in one suit against **161** different Defendants[1]—*and **236** different product listings*— in violation of 35 U.S.C. § 299.[2]

As a result, Plaintiff has induced the Court to improperly enter and extend a TRO that has frozen GWSK's Amazon account, affecting sales of both the accused products *and* non-accused products. The TRO is causing tens of thousands of dollars in losses each day to GWSK and has, to this point, caused the loss of approximately $400,000. GWSK fears for its continued existence as an ongoing concern. The result is particularly shocking because (a) GWSK's product does not actually infringe the '256 Patent; (b) the asserted claim of the '256 Patent is invalid; and (c) GWSK has had no opportunity to respond until now.

For the reasons set forth herein, GWSK respectfully requests that the Temporary Restraining Order (ECF Nos. 14, 47, 62) be dissolved as against GWSK.

---

[1] The Plaintiff's improper filing against 161 Defendants—in violation of 35 U.S.C. § 299—also cheats the Clerk of the Court and the United States of the filing fees that are properly due. In this case, with a filing fee of $405 per Defendant and 161 Defendants, the Plaintiff should have paid filing fees of **$65,205** to the Clerk of the Court and to the United States.

[2] 35 U.S.C. § 299 prohibits the joinder of multiple defendants in a patent suit unless the right to relief "is asserted…with respect to or arising out of the same…series of transactions or occurrences relating to…the same accused product or process" and "questions of fact common to all defendants will arise in the action." The statute states that "accused infringers may not be joined in one action…based solely on allegations that they each have infringed the patent or patents in suit."

## II.    STATEMENT OF FACTS

### A.    GWSK

GWSK sells consumer products on Amazon and has sold such products since August 2020. (*See* Declaration of Jiaxin Hu in Support of Emergency Motion to Dissolve Temporary Restraining Order ("Hu Decl.") at ¶ 3.)  One of GWSK's products is a Cocktail Smoker Kit which has been sold since May 2, 2022.  (*Id.* ¶¶ 5, 6.)  GWSK's Cocktail Smoker Kit is shown below:



https://www.amazon.com/Cocktail-Whiskey-Cocktails-Smoking-Mixology/dp/B09YHZY999

Mr. Hu of GWSK designed the GWSK Cocktail Smoker in December 2021 and submitted a Chinese design patent application relating to the design in April 2022.  (*Id.* ¶ 8.)  GWSK's design was not based on—or designed with reference to—the Plaintiff's products or to the '256 Patent. (*Id.* ¶ 11.)  The GWSK Cocktail Smoker (the "Accused GWSK Product") was identified on Schedule A of the Complaint, and GWSK's sales have been enjoined since December 1, 2023 pursuant to the TRO entered in this matter (ECF No. 14) and the extensions to the TRO (ECF Nos.

47, 62).  (*See* Declaration of Brian N. Platt in Support of Emergency Motion to Dissolve Temporary Restraining Order ("Platt Decl.") at ¶ 3.).  Neither the Complaint nor the Motion for TRO contain any analysis of GWSK's products or the GWSK Cocktail Smoker.

GWSK has suffered significant financial losses—tens of thousands of dollars—for each day that its Amazon account is frozen.  (Hu Decl. at ¶ 14.)  And as of today, GWSK estimates that it has suffered approximately $400,000 in losses due to the freezing of its Amazon account pursuant to the TRO.  (*Id.* ¶ 15.)  GWSK is now facing a critical financial crisis due to the TRO, with the inability to operate normally. Bankruptcy looms, and its dedicated employees are at risk of losing their livelihoods. (*Id.* ¶¶ 16-22.) Plaintiff's suggestion that the TRO "maintain[s] the status quo" completely ignores the violence done to GWSK's business during the holiday shopping season, both for accused and non-accused products.

### B.  Procedural History of This Case, Including Plaintiff's Misleading Representations to the Court

Plaintiff filed its Complaint on November 16 and its initial motion for TRO on November 21, based on one "exemplary" product, photographs of which are reproduced below:

 

**Example Accused Product**
(Compl., ECF No. 1, ¶ 28 & Exh. B; *see also* TRO Mem., ECF No. 3, pp. 13-17.)

There were no specific allegations about GWSK's product in either the Complaint or Plaintiff's TRO motion. (*See* ECF Nos. 1, 3.) Yet based on Plaintiff's representations, the Court granted Plaintiff's TRO motion on December 1, causing GWSK's account with Amazon.com to be frozen. (ECF No. 14.)  Plaintiff's counsel did not serve the Complaint on GWSK until December 13.  (ECF No. 30-1, p. 7 (Defendant 59).)[3]  When it became apparent to the Court that several different configurations of products were being sold by the Defendants, the Court ordered Plaintiff to explain "[w]hether Plaintiff had a good-faith basis to believe that it could demonstrate that each Defendant is selling products that are infringing its '256 Patent." (ECF No. 47, p. 2.) In a December 19 response, filed more than a month after Plaintiff had submitted its Complaint and TRO motion, Plaintiff admitted that the "exemplary" product described in its Complaint and TRO motion was not, in fact, "exemplary." Plaintiff stated in its December 19 response that "not all accused infringers sell the same product" and that "[t]he accused products come in one of *three* different structural configurations." (ECF No. 59, pp. 2-4 (emphasis added).)  Attached to that response were *six* "exemplary" charts, demonstrating that the Plaintiff has actually concluded that the Defendants are selling at least *six* different configurations. (ECF No. 59-2 (Ex. B), 59-3 (Ex. C), 59-4 (Ex. D), 59-5 (Ex. E), 59-6 (Ex. F), 59-7 (Ex. G).)

In Plaintiff's December 19 response, Plaintiff asserted that the products of **<u>58 of the Defendants</u>**, including GWSK's product, have a cross section that appears as follows:

---

[3] Plaintiff has never served GWSK *or any other Defendant* with a Summons, and therefore this Court does not have personal jurisdiction over GWSK. Fed.R.Civ.P. 4(k)(1), 4(k)(2) (explaining that it is service of "a summons" that "establishes personal jurisdiction over a defendant").



(ECF No. 59-5, pp. 2, 13 ("D59").)  In the first instance, a cursory review of the pictures of the 58 different products that allegedly share this cross section shows that these products have many differences that Plaintiffs do not bother to address. (ECF No. 59-5, pp. 2-19.)  Further, as should be immediately apparent, this configuration is very different from the "exemplary" product discussed in Plaintiff's Complaint and TRO motion.  And as discussed below, this configuration does *not* infringe claim 1 of the '256 Patent, despite Plaintiff's belated attempt to argue that it does. At the very least, there are substantial questions about whether this configuration infringes claim 1 of the '256 Patent. Therefore, injunctive relief is improper at this stage of the case.

### C.    The Prior Art to the '256 Patent.

The '256 Patent was filed on November 20, 2020 by Soak Limited. But the alleged invention of the '256 Patent was available to the public more than one year prior to the filing of the patent.  For example, the Zuma Restaurant in Hong Kong posted photographs of an identical device in use in June 2019, more than 16 months before the filing of the '256 Patent; and shortly thereafter another Zuma Restaurant, this one based in Rome, posted a similar photo to its Instagram account, depicting the alleged invention of the '256 Patent in public use:



https://www.instagram.com/p/BzNzATUo_yb/
(Platt Decl., Exh. 1)



https://www.instagram.com/p/By8WSpfnt39/
(Platt Decl., Exh. 2)

In addition, Soak Limited operated its own Instagram account during the same period. Soak Limited contracted with a UK company (TFTurning) to make the products depicted in the '256 Patent; and both parties made numerous Instagram postings depicting the construction, packaging, and public use of those products.  (*See* Platt Decl., Exhs. 3, 4, 5, 6, and 7.)  For example, on October 7, 2019—***more than one year before the filing date of the '256 Patent***—TFTurning posted photographs of finished Soak Limited products being used for cocktail smoking:



https://www.instagram.com/p/B3UPH35APu5/?img_index=2
(Platt Decl., Exh. 6)

Soak Limited then "reposted" those Instagram posts, as shown above, to its own Instagram account.  (*See* Platt Decl., Exh. 6.)  Soak Limited also maintains a Facebook page that includes photographs of its products and that demonstrates the public use of those products.  In addition to its reposting of the public use above to Instagram, Soak Limited posted photos of the inventor of the '256 Patent, Mr. Robert Sumner, publicly using a cocktail smoker product identical to those

depicted in the '256 Patent, as depicted below.  The photos were posted more than one year before

the filing of the patent and show all of the key elements of the '256 Patent:



https://www.facebook.com/soaklondon/photos/pb.100063477192976.-
2207520000/1521127901361034/
(Platt Decl., Exh. 9)

In addition, other third-parties were making cocktail smoker products long before the filing

date of the '256 Patent that have a structure similar to the GWSK product and the other accused

products with which Plaintiff has lumped GWSK's product.  These prior art products include an

exemplary "Smoke Top" cocktail smoker sold by Middleton Mixology, invented in 2015:

 

(*See* Platt Decl., Exhs. 10, 11, 12, 13, 14.)  These third-party prior art products and disclosures, which include the "Smoke Top" and the Zuma Restaurant products, and the patent owner's own public disclosures, raise substantial questions about the validity of the '256 Patent.

**III.   THE COURT SHOULD DISSOLVE THE TEMPORARY RESTRAINING ORDER AS TO DEFENDANT GWSK**

   **A.   The TRO Should be Dissolved Because Plaintiff Failed to Comply with the Procedural Requirements of Fed. R. Civ. P. 65(b)(1)**

Rule 65(b)(1) includes two factual predicates for the issuance of a temporary restraining order without notice to an adverse party:

   (b) TEMPORARY RESTRAINING ORDER.

      (1) *Issuing Without Notice.* The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:

         (A) ***specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition***; and

         (B) ***the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.***

*See* Fed. R. Civ. P. 65(b)(1)(A) (emphasis added). Because the Plaintiff failed to comply with either requirement, the TRO should be dissolved for its failure to comply with Rule 65(b)(1).

### 1. Plaintiff Has Failed to Provide Specific Facts in a Declaration or Affidavit Showing That Immediate and Irreparable Injury, Loss, or Damage Would Result.

In support of its Motion, Plaintiff provided the Weisberg Declaration.  (*See* ECF No. 3-1.) But the Weisberg Declaration does not contain *specific facts* regarding *GWSK's product*.  Rather, the Weisberg Declaration contains general allegations and conclusory statements.  For example, the Weisberg Declaration generally alleges that Plaintiff's success resulted in "significant counterfeiting" and that Plaintiff will suffer irreparable injury "if infringers are allowed to continue to infringe . . . ."  (*See* Weisberg Decl. at ¶¶ 10, 22.)  But Weisberg fails to provide any ***specific facts*** regarding ***GWSK's product*** or its alleged infringement. And that is what the rule requires. General statements regarding counterfeiting or infringement do not meet the requirements of Rule 65(b)(1) for ***specific facts*** that ***clearly show*** the existence of an immediate and irreparable injury or loss.  For example, if—as GWSK contends—its product does not infringe the Plaintiff's patent, there would be no irreparable injury. And now it is abundantly clear that Weisberg's allegation of "counterfeiting" is clearly incorrect, given that GWSK's product has a different configuration from Plaintiff's product. Moreover, Weisberg's concern with the dissipation of funds is hopelessly generalized, with no ***specific facts*** that ***clearly show*** that ***GWSK*** will not be able to satisfy a judgment. And with this memorandum, GWSK provides evidence that the dissipation of funds is not an issue with respect to GWSK. In short, Weisberg's general declaration regarding counterfeiting and patent infringement fails to meet the requirements of Rule 65(b)(1)(A) with respect to GWSK.

None of Plaintiff's submissions since its original TRO motion and the submission of the Weisberg declaration rectify this problem. The December 14 response requesting an extension of

the TRO and the December 19 requesting a further extension of the TRO—and finally admitting that there are at least six different configurations for the Defendants' products—is not accompanied by an affidavit or declaration with any "specific facts" about GWSK.

> **2.** **Plaintiff's Attorney Failed to Certify "In Writing" The Reasons Why Notice to the Adverse Party Should Not be Required.**

A second requirement of Rule 65(b)(1) is that the "movant's attorney [must certify] in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1)(B). Plaintiff totally failed to comply with this second requirement in its original TRO motion. In fact, in its original TRO motion, Plaintiff partially quoted Rule 65(b)(1) and inserted a period where none exists, and entirely omitted any discussion of this requirement from its brief. (*See* TRO Mem., p. 8.) In any event, Plaintiff's counsel failed to provide a certification ". . . in writing [of] any efforts made to give notice [to each adverse party] and the reasons why it should not be required." This requirement of Rule 65 is not merely a procedural formality: notice and an opportunity to be heard are fundamental in our entire system of jurisprudence. *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cty.*, 415 U.S. 423, 438-39 (1974). Here, if Plaintiff had complied with Rule 65, the Court would have had the additional information needed to consider whether to enter a TRO. Because the Plaintiff failed to comply with the procedural requirements of Rule 65, the Court should dissolve the TRO as it applies to GWSK.

And none of Plaintiff's submissions since its original TRO motion have rectified this problem. Plaintiff has represented that it served the Complaint and TRO order on GWSK on December 13 (ECF No. 30-1, p. 7 (Defendant 59)), but Plaintiff did not give any notice of its requests for an extension of the TRO. GWSK discovered those requests on its own.

12

**B.    The Plaintiffs Have Failed to Make the Required Showing for an Ex Parte Temporary Restraining Order**

The Supreme Court has made clear that an ex parte temporary restraining order is an extraordinary remedy: "[O]ur entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." *Granny Goose,* 415 U.S. at 438-39.  A temporary restraining order is an *extraordinary remedy* available only "if the plaintiff establish[es] that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest." *E.g.*, *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  "[A]ll four requirements must be satisfied." *Cantley v. W. Va. Reg'l Jail & Corr. Facility Auth.*, 771 F.3d 201, 207 (4th Cir. 2014). The Federal Circuit has made clear that "a substantial question concerning either infringement or validity" precludes the issuance of preliminary injunctive relief (and therefore precludes a TRO as well). *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350-51, 1358-59 (Fed. Cir. 2001) ("If [the accused infringer] raises a substantial question concerning either infringement or validity, *i.e.*, asserts an infringement or invalidity defense that the patentee cannot prove 'lacks substantial merit,' the preliminary injunction should not issue.").

Because none of the four requirements were (or can be) satisfied with respect to GWSK and because, at the very least, there are substantial questions about infringement and validity, the Temporary Restraining Order against GWSK should be immediately dissolved.

**1.    Plaintiff Continues its Overbroad Assertion of Patent Rights**

The Plaintiff's pattern of conduct against numerous defendants in this case and others warrants special attention and scrutiny by the Court.  In another recent case captioned *Thousand Oaks Barrel Co., LLC v. Schedule A*, Case No. 1:23-cv-3378 (N.D.Ill.), the Court had occasion to

look carefully at the Plaintiff's theories of design patent infringement related to the same products. And in that case, the Court soundly rejected the Plaintiff's overbroad theories of infringement and denied its request for a preliminary injunction.  First, the Court noted the paucity of analysis in Plaintiff's motion:

> The plaintiff also points to its prior motion for a temporary restraining order [10] in support of its motion for a preliminary injunction. There, the plaintiff states that "[t]he documentation submitted by Thousand Oaks shows that an ordinary observer would be deceived into thinking that the Infringing Product was the same as the Foghat Design." [10] at 17. ***That statement comprises the entirety of the plaintiff's design patent infringement analysis in either filing.*** See [10], [21].

*Thousand Oaks,* 1:23-cv-3378, at *1 (N.D.Ill. July 20, 2023) (Platt Decl., Exh. 15.) (emphasis added).  The Court also noted the Plaintiff's abject failure to meet the standard for a preliminary injunction:

> That leaves the plaintiff's design patent claims, which do not warrant injunctive relief. To obtain a preliminary injunction, a plaintiff must show that: (1) without this relief, it will likely suffer irreparable harm; (2) traditional legal remedies would be inadequate; and (3) it is likely to succeed on the merits. The plaintiff has not established any of these elements.  Many of the plaintiff's claims concerning irreparable harm stem from the alleged trademark infringement, which is no longer at issue because the plaintiff dismissed its trademark claims.  The plaintiff has made no attempt to show how the alleged design patent infringement caused irreparable harm to the plaintiff or how damages under 35 U.S.C. § 289 are inadequate.

*Id.* at *2 (internal citations omitted) (Platt Decl., Exh. 15.)  Lastly, the Court noted the Plaintiff's failure to show that a likelihood of success on the merits:

> Nor has the plaintiff shown that it is likely to succeed on the merits. To establish infringement of a design patent, "the patentee must establish that an ordinary observer, familiar with the prior art designs, would be deceived into believing that the accused product is the same as the patented design."  Plaintiff's counsel acknowledged that the plaintiff's pleadings and declarations do not compare the allegedly infringing products to the plaintiff's design patents. Rather, as with its trademark claims, the plaintiff makes broad claims of design patent infringement without actually showing any infringement. The plaintiff submitted copies of its design patents and screenshots of the allegedly infringing products and then, at the hearing, its counsel noted that "if you review the listings that we have, you can plainly see that the products match the design of my client's product that's protected

by the design patent." When asked whether the plaintiff's design patents, which show a round or cylindrical top, covered a hexagonal top offered by one of the defendants, the plaintiff's counsel claimed that they did. Given that shape-sorting toys intended for toddlers require one to distinguish between a circle and a hexagon, the plaintiff's argument is unconvincing. The plaintiff has made little to no effort to show that the defendants infringe the plaintiff's design patents, which means that the plaintiff has failed to show that it is likely to succeed on the merits.

*Id.* at \*2 (internal citations omitted) (Platt Decl., Exh. 15.) In short, the myriad deficiencies with Plaintiff's filings before this Court resemble the failings for which it was previously scolded in Illinois. This pattern of conduct warrants special scrutiny of the deficient allegations in this case.

### 2. Plaintiff Is Unlikely To Succeed on the Merits of its Patent Claims Against GWSK.

#### a. Plaintiff Did Not Meet its Burden to Prove Infringement by GWSK.

The burden is on Plaintiff to prove that it is likely to succeed on the merits. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). In order to do so, Plaintiff must prove that the Accused GWSK Product infringes asserted claim 1 of the '256 Patent.[4] As another Court previously found in a design patent infringement case involving similar products and the same Plaintiff, Plaintiff has not met this very heavy burden.

Proving patent infringement is a two-step process. *Markman v. Westview Instruments*, Inc., 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). The first step is to construe the claims. *Id.* The second step is to compare the accused product to the properly construed claims. *Id.* Because Plaintiff has performed neither step, it cannot have met its burden.

---

[4] With respect to the required showing of a likelihood of success, the Court's original TRO Order is based solely on the Court's finding that "Plaintiff has established that it is likely to succeed on its patent infringement claim." ECF No. 14 at 2. The Order does not address Plaintiff's Motion for TRO with respect to its allegations of trade dress infringement. (*See* ECF No. 3 at 17-21.) Accordingly, the likelihood of success of Plaintiff's trade dress infringement claims are not specifically addressed herein. Nevertheless, Defendant notes that Plaintiff did not provide the Court with any evidence regarding the packaging of GWSK's product to support its trade dress claim against GWSK.

With respect to step 1 of the infringement analysis, Plaintiff made no effort to construe asserted claim 1 with respect to its Motion for TRO. (*See*, *generally*, ECF No. 3 at pp. 13-17, Exh. B.)  Indeed, the closest Plaintiff came to a claim construction analysis was the bald statement that:

> The claims of the '256 Patent are not limited to any particular shape of a smoker device. Any shape of a smoker device having a base with a fuel chamber portion and conduit portion below the floor would meet the limitations of the '256 Patent claims.

(*Id.* at p. 17.)  To the extent this statement is an attempt at the required claim construction, it fails woefully because it completely ignores a plethora of structural and functional limitations set forth in claim 1. In its papers filed on December 19 in response to the Court's questions regarding Plaintiff's infringement allegations, the Plaintiff again did not make **any** effort to construe the claims. (*See generally* ECF No. 59 at pp. 2-4, Exhs. B-G.)  Instead, Plaintiff doubled down on its broad statement regarding the scope of the claims, stating:

> There are no limitations in the claims for the size, shape, or orientation of the fuel chamber portion, conduit portion, wall in conduit portion, or aperture through a wall of the conduit portion, except that the conduit portion is disposed below the floor.

(*Id.* at Exh. B, p.1.). This is not proper claim construction and indeed flies in the face of the language of claim 1 which—***on its face***—has various requirements as to the position of the channel, wall, and aperture with respect to one another. (*See* '256 Patent at claim 1.)

Plaintiff also failed to perform the second step of the infringement analysis because it did not compare the properly construed claim to GWSK's Accused Product. Indeed, as noted *supra* at Section II.B, Plaintiff did not provide the Court with **<u>any specific evidence</u>** regarding the Accused GWSK Product. (*See supra* at Section II.B.). Even in its December 19 filing, Plaintiff did not directly address the alleged infringement of the Accused GWSK Product, choosing instead to lump it in with 57 other products allegedly exemplified by a single claim chart for a non-GWSK product.

(*See* ECF No. 59-5, pp. 2-19.)[5]  Plaintiff's less-than-ordinary effort in meeting its burden to prove infringement by GWSK should not be rewarded with the "extraordinary remedy" of a TRO, especially when one considers the substantial differences between claim 1 of the '256 Patent and the Accused GWSK Product as set forth below.  Accordingly, the Court should dissolve the TRO as to GWSK.

   **b.**  **Substantial Questions Exist Regarding the Alleged Infringement of the '256 Patent by the Accused GWSK Product.**

  Patent infringement can occur in two ways: there can either be literal infringement or infringement under the doctrine of equivalents.  "Literal infringement exists if each of the limitations of the asserted claim(s) read on, that is, are found in, the accused device."  *Baxter Healthcare Corp. v. Spectramed, Inc.*, 49 F.3d 1575, 1583 (Fed. Cir. 1995). "The absence of even a single limitation…precludes a finding of literal infringement."  *Kahn v. General Motors Corp.*, 135 F.3d 1472, 1477 (Fed. Cir. 1998)  Accordingly, in order to show a likelihood of success on the merits, the Plaintiff must prove that each and every element of claim 1 of the '256 Patent is literally or equivalently present in the Accused GWSK Product.

  Plaintiff cannot meet this burden because there are substantial questions regarding infringement. *Trebro Manufacturing, Inc. v. Firefly Equipment, LLC*, 748 F.3d 1159, 1165 (Fed. Cir. 2014) ("An accused infringer can defeat a showing of likelihood of success on the merits by

---

[5] In its Motion for Preliminary Injunction ("PI Motion"), the Plaintiff finally submitted a claim chart regarding the Accused GWSK Product. (*See* ECF No. 67-3 at pp. 143-153.)  The existing TRO was issued based on the Plaintiff's filings prior to its submission of the PI Motion and thus the Court should not consider the PI Motion with respect to Plaintiff's present motion. GWSK will respond to the allegations in the PI Motion, in accordance with the Court's schedule, on January 4, 2024. Suffice it to say at this point that Plaintiff's PI Motion does not overcome the issues raised in this motion.

demonstrating a substantial question of…infringement.") (citing *Aria Diagnostics, Inc. v. Sequenom, Inc.,* 726 F.3d 1296, 1304 (Fed. Cir. 2013)).

Asserted claim 1 of the '256 Patent is set forth below:

1. A device for imparting smoked flavors to beverages and foodstuffs, comprising:

   a base having a fuel chamber portion at its upper end and a conduit portion at its lower end, the fuel chamber portion comprising an upper wall portion defining a perimeter edge of the fuel chamber portion and a floor defining a bottom end, the floor extending from the upper wall portion to an opening in the floor,

   wherein the fuel chamber portion is oriented to hold fuel, and

   **wherein the conduit portion** is disposed below the floor and **comprises a channel through the conduit portion** so that, when the fuel in the fuel chamber portion is ignited, the channel facilitates flow of smoke downward from the fuel chamber portion through **at least one aperture that extends from the channel space through a wall of the conduit portion**.

'256 Patent claim 1 (emphasis added).  Figure 3 of the '256 Patent, which is representative of every embodiment disclosed in the '256 Patent, clearly illustrates the meaning of the claim language highlighted above.

//

//

//

//

//

//

//

//

//



In describing Figure 3, the '256 Patent states that "[e]ach aperture **114** is an open hole through an outer wall of the conduit portion **108** that can extend a vent for smoke from the channel space to the exterior of the conduit portion **108**." ('256 Patent at col. 4, ln. 6-9.).  As illustrated above, the "channel facilitates the flow of smoke downward from the fuel chamber" (shown by crosshatched blue arrow) and the apertures receive that flow and redirect it through a wall of the conduit portion (as illustrated by solid blue arrows showing flow out of two of the apertures).

The design of the Accused GWSK Product is entirely different than that covered by claim 1 of the '256 Patent. Helpful photographs of the GWSK product are reproduced below:

//

//

//

//

//



(Hu Decl. at ¶¶ 7-8 & Exh. A.) In the GWSK product, there is only one space that could conceivably qualify as the claimed "channel," and once that space is identified as the "channel," there is no other space in GWSK's product that can qualify as the claimed "aperture" that "extends from" that channel and "through a wall of the conduit portion." Instead, as shown in the diagram below, the smoke flows directly downward, through a channel, and out the bottom of that channel:



(Hu Decl. at ¶¶ 10-11 & Exh. B). Because the Accused GWSK Product does not have an aperture that (1) "extends from" the only feature that could conceivably be identified as a "channel" and that (2) extends "through a wall of the conduit portion," there can be no literal infringement by the

GWSK product.[6]  As a result, Plaintiff has zero likelihood of success on the merits with respect to patent infringement and the Order should accordingly be dissolved as against GWSK.

In its December 19, 2023 response, Plaintiff provides a claim chart and diagram that argues that somehow the bottom end of the "channel" is also the required "aperture." (See ECF No. 59-5, pp. 2, 13 ("D59").) That diagram is reproduced once again below:



The arguments embodied in this diagram fail for several reasons and certainly do not meet Plaintiff's burden to show that there are no substantial questions about infringement. Indeed, logic and common sense preclude Plaintiff's argument. According to claim 1, the claimed "aperture" must "extend from" the claimed "channel" and "through a wall of the conduit portion." The first problem with the diagram supporting Plaintiff's argument is that it apparently considers the bottom *surface* of GWSK's product to be a "wall." But a surface is not a wall; a "wall" has a thickness. Claim 1 requires an "aperture" that extends "*through* a wall of the conduit portion," *i.e.*, the

---

[6] Plaintiff did not provide any analysis of infringement under the doctrine of equivalents. Nevertheless, Plaintiff cannot show infringement under the doctrine of equivalents because an entire element – the aperture – is missing. *See Warner-Jenkinson Co. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 29, 39 n.8, 40 (1997) (holding that application of the doctrine of equivalents is not appropriate if an asserted equivalent causes a corresponding claim limitation to be "effectively eliminate[d]," "entirely vitiate[d]," or "eliminate[d] completely"); *Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1160 (Fed. Cir. 1998) ("If a theory of equivalence would vitiate a claim limitation, however, then there can be no infringement under the doctrine of equivalents as a matter of law.").

aperture must enter and exit the wall. But regardless of whether a "wall" can be a surface or not, there is no "wall" through which Plaintiff's "aperture" extends. Instead, Plaintiff's "aperture" is part of—and extends through—the open space that Plaintiff has already labeled the "channel." This leads to the second problem with Plaintiff's argument. Claim 1 requires that the "aperture" "extend from" the "channel," demonstrating that the "aperture" and the "channel" must be two different spaces. But Plaintiff wants to label the bottom of the "channel"—part of the "channel"— as the "aperture."[7]

   Taken together, these points demonstrate that there is no infringement. Common sense demonstrates that there is no "wall" at the bottom of the "channel" through which an "aperture" extends. Rather, the bottom of the "channel" is an open space and is therefore not a "wall" through which the "aperture" can extend. Plaintiff's argument would have the same space be *both* an "aperture" *and* a "wall." That argument defies logic since an "aperture" must be an empty space and a "wall" must be a structure and must *not* be an empty space. Likewise, Plaintiff's argument would have a part of the "channel" serve as the "aperture," but claim 1 requires that the "aperture" "extend from" the "channel" and therefore constitute a different space from the "channel." At the very least, there are substantial questions about whether Plaintiff's infringement argument is correct, and therefore no TRO or preliminary injunction can issue. *Amazon.com*, 239 F.3d at 1350-51 ("If [the accused infringer] raises a substantial question concerning either infringement or validity, *i.e.*, asserts an infringement or invalidity defense that the patentee cannot prove 'lacks substantial merit,' the preliminary injunction should not issue.").

---

[7] This problem with Plaintiff's argument is reinforced by claim 1's requirement for a "channel *through* the conduit portion." There is only one space that can be identified as passing "through the conduit portion," *i.e.*, entering and exiting the conduit portion, and once that space is identified as the "channel" required by claim 1, there is no other space that can be identified as the "aperture" that must "extend from" that "channel."

### c. Substantially Meritorious Questions Exist Regarding the Invalidity of the '256 Patent.

To show likelihood of success on the merits, Plaintiff "must show [] that it will likely withstand challenges, if any, to the validity of the patent." *Titan Tire Corp. v. Case New Holland, Inc*., 566 F.3d 1372, 1376 (Fed. Cir. 2009) (citations omitted). "An accused infringer can defeat a showing of likelihood of success on the merits by demonstrating a substantial question of validity." *Trebro Manufacturing, Inc. v. Firefly Equipment, LLC*, 748 F.3d 1159, 1165 (Fed. Cir. 2014) (citing *Aria Diagnostics, Inc. v. Sequenom, Inc.,*726 F.3d 1296, 1304 (Fed. Cir. 2013)). At the TRO and preliminary injunction stage, "one need not make out a case of actual invalidity. Vulnerability is the issue at the preliminary injunction stage, while validity is the issue at trial. The showing of a substantial question as to invalidity thus requires less proof than the clear and convincing showing necessary to establish invalidity itself." *Amazon.com*, 239 F.3d at 1359. "[T]he patentee must show that the alleged infringer's defense *lacks substantial merit.*" *New England Braiding Co. v. A.W. Chesterton Co.*, 970 F.2d 878, 882-83 (Fed. Cir. 1992).

As discussed below, substantially meritorious questions exist regarding the validity of the '256 Patent.  Because Plaintiff cannot show that these questions lack substantial merit, the TRO should be dissolved with respect to GWSK.[8]

#### i. Plaintiff's Attempt to Cover the GWSK Product Results In Invalidity of the '256 Patent In View of the Prior Art Smoke Top Product

In its effort to broaden the claims of the '256 Patent to improperly cover the GWSK product, Plaintiff invalidates its own patent. It is a century-old axiom of patent law that "[t]hat which infringes, if later, would anticipate, if earlier." *Peters v. Active Manufacturing Co.,* 129 U.S.

---

[8] These substantial questions regarding the invalidity of the '256 Patent are also a basis to dissolve the TRO with respect to all remaining Defendants.

530 (1889); *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1239 (Fed. Cir. 2009) ("[I]t has been well established for over a century that the same test must be used for both infringement and anticipation.")  As shown below, the exemplary prior art "Smoke Top" has a similar structure to the GWSK Accused Product:

 

Smoke Top
(prior art – *see* Platt Decl. Exh. 11, 12)

The prior art Smoke Top product embodies the structure accused by the Plaintiff of infringement, and these elements are mapped in a claim chart attached to the Platt Declaration. (*See* Platt Decl., Exh 16.)  Accordingly, if there is infringement (which there is not), then the prior art Smoke Top product invalidates at least claim 1 of the '256 Patent.

### ii. The '256 Patent is Invalid Because Zuma Restaurant Publicly Disclosed and Publicly Used a Product Identical to the Preferred Embodiment.

The public use or public disclosure of an invention more than one-year before filing means the patent is likely invalid.  *See* 35 U.S.C. § 102.  In this case, a third party—the Zuma Restaurant—made public use of the purported invention of the '256 Patent more than one-year before the filing of the '256 Patent and publicly provided detailed photographs of the product in use. The Zuma

Restaurant images depict the preferred embodiment of the '256 Patent being used with a torch and fuel to provide the desired cocktail smoking effect in images reproduced below:




(Platt Decl., Exh. 1)                                    (Platt Decl., Exh. 2)

Notice that the Zuma Restaurant images show the use of apertures exactly like those depicted in the '256 Patent. Public use or public disclosure of an invention—*more than one year before the filing of the '256 Patent*—means that the patent is likely invalid under Section 102 because the disclosures above are prior art to the '256 Patent.

> ### iii. The '256 Patent is Invalid Because Soak Limited and TFTurning Publicly Disclosed and Publicly Used the Alleged Invention More Than 1 Year Before Filing the '256 Patent.

In addition to the Smoke Top products and the Zuma Restaurant product, the inventor and his agents made disqualifying public uses and public disclosures of the preferred embodiment that is disclosed in the '256 Patent on both Facebook and Instagram.  Four months after the Zuma Restaurant public disclosures, Instagram user TFTurning—the manufacturer for Soak Limited, the owner of the '256 Patent—provided the disclosure below showing the use of the alleged invention. And Soak Limited then reposted the disclosure on its own Instagram pages:



(Platt Decl., Exh. 6)



(Platt Decl., Exh. 9)

These facts demonstrate that the '256 patent is invalid or, at the very least, that there is a substantial question as to its validity. As such, the TRO cannot stand and should be dissolved.

### 3.     Plaintiff is Unlikely to Suffer Irreparable Harm

Plaintiff argues it will suffer irreparable harm for two reasons, but neither of those reasons applies to GWSK. (*See* TRO Mem. at 21.)  First, Plaintiff contends it will lose customers and goodwill because of the Defendants' infringing activities.  (*See id*. at 21.)  But with regard to GWSK's product, Plaintiff has yet to plead or argue any facts that would substantiate an allegation of patent infringement; absent an infringing product, the Plaintiff suffers no harm—and certainly no irreparable harm.  Thus, Plaintiff fails to establish irreparable harm with respect to patent infringement by GWSK.

Even if Plaintiff is somehow able to establish infringement by GWSK, it cannot demonstrate that its harm is irreparable. Plaintiff's second argument is that a TRO and an asset freeze are justified "due to the likelihood that a counterfeiter will dissipate funds . . . and thereby deprive the plaintiff of an adequate remedy."  (TRO Mem. at 21.)  It is true that "the issues of irreparable harm and adequacy of remedies at law are inextricably linked." *Activevideo Networks Inc. v. Verizon Communications, Inc.*, 827 F. Supp. 2d 641, 650 (E.D. Va. 2011), *aff'd in part, rev'd in part*, 694 F.3d 1312 (Fed. Cir. 2012). But Plaintiff paints with too broad a brush—labeling all the Defendants as judgment-proof and as "counterfeiters." GWSK has never transferred assets out of any account in the United States as a result of having a lawsuit filed against it and has no plans to do so now. (Hu Decl. ¶ 4.)  It is also not a "counterfeiter."  The GWSK Cocktail Smoker was not developed based on the Plaintiff's products or based on the '256 Patent and looks completely different. (Hu Decl. ¶ 12.)  Thus, Plaintiff's arguments for irreparable harm do not apply to GWSK.  Instead, the facts demonstrate that Plaintiff will have an adequate remedy at law

from GWSK if it is somehow found to infringe Plaintiff's patent and therefore there is no irreparable harm for Plaintiff with respect to GWSK.

Finally, Plaintiff's allegations of irreparable harm ring hollow with respect to GWSK because of Plaintiff's delay in bringing this lawsuit. GWSK has been making sales since 2022. (Hu Decl. ¶ 9.) Plaintiff has known since July and August 2023 that its patent would issue on September 5,[9] and yet Plaintiff took more than four months since it knew about the impending issuance of its patent to bring this suit and file its TRO motion. Nor did Plaintiff contact GWSK regarding its alleged infringement of the '256 Patent or trade dress infringement prior to bringing this suit. (Hu Decl. ¶ 13.) If the harm to Plaintiff from GWSK's actions was so great and so irreparable as it claims, Plaintiff would have and should have acted more quickly. Plaintiff's claims of irreparable harm with respect to GWSK are not only unsupported but also belied by its own actions.

### 4. The Balance of the Equities Tips Sharply Away from Entry of an Ex Parte TRO

Plaintiff wrongly suggests that the balance of equities weighs in favor of "maintaining the status quo" by freezing the Amazon accounts of 161 Defendants, including GWSK. This assertion is misleading, at best. For GWSK, the TRO resulted in a shutdown of its profitable and competitive business *before* this Court's consideration of any evidence or briefing from GWSK regarding its alleged infringement. As discussed *supra*, GWSK's product does not infringe. Moreover, the entry of a TRO against GWSK's Amazon accounts is causing thousands of dollars in lost sales *every day*. Plaintiff's suggestion that the TRO "maintain[s] the status quo" ignores the violence

---

[9] The U.S. Patent and Trademark Office issued a Notice of Allowance for the '256 Patent to Plaintiff's counsel on July 10, 2023, and on August 16, 2023 informed Plaintiff's counsel that the patent would issue on September 5. (Ex. A, July 10, 2023 Notice of Allowance; Ex. B, August 16, 2023 Issue Notification.)

done to GWSK's business during the holiday shopping season, both for the accused product ***and for non-accused products***. (*See* Hu Decl. ¶ 21.) Lastly, Plaintiff repeatedly avers that the Defendants are judgment-proof and "counterfeiters," thus allegedly justifying entry of a TRO against them so that they will not dissipate assets. (*See* TRO Memo, n.1, *passim*.) As explained above, those smears do not apply to GWSK. Instead, its frozen Amazon account is directly impacting GWSK's cash flow and, as its product is seasonal, GWSK stands to lose thousands in holiday sales. (*See* Hu Decl. ¶ 20.) GWSK now lacks working capital and fears for its very existence and for the welfare of its employees. (*Id.* ¶ 23.)

The balance of equities tips sharply in GWSK's favor for two key reasons: (1) the Plaintiff is unlikely to succeed on the merits and (2) the TRO is causing a substantial financial hardship to GWSK. The Court should conclude that the balance of equities weighs against the TRO.

### 5. The Public Interest Weighs Strongly Against Entry of a TRO Against GWSK.

This factor is often "inextricably intertwined with the Court's determination [of] likelihood of success on the merits." *MicroAire Surgical Instruments, LLC v. Arthrex, Inc.*, 726 F. Supp. 2d 604, 641 (W.D. Va. 2010). Plaintiff first suggests that the public interest would be served in preventing the sale of infringing products. (*See* TRO Mem. at 23.) But Plaintiff has provided the Court with insufficient evidence that any GWSK product infringes any patent claim. Thus, because Plaintiff is unlikely to succeed on the merits against GWSK, the public interest weighs against the TRO. *See MicroAire*, 726 F. Supp. 2d at 641. Plaintiff also suggests that the public interest weighs against "infringing misconduct," and that the public "has a right not to be confused or defrauded." (*See* TRO Mem. at 24.) But again, Plaintiff's argument presumes too much because the Plaintiff failed to provide evidence of infringing misconduct by GWSK.

Lastly, the public interest weighs heavily against a TRO for another reason: an ex parte TRO is an extraordinary remedy. "[O]ur entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." *Granny Goose Foods,* 415 U.S. at 438-39. Justice and the public interest prefer a decision on the merits after notice and an opportunity to be heard.

**IV**.  **CONCLUSION**

For the reasons set forth herein, GWSK respectfully requests that the Court immediately dissolve the Temporary Restraining Order (ECF No. 14, 47, 62) as against Defendant GWSK.

DATED December 23, 2023.

Respectfully submitted,
LAW OFFICES OF CRAIG C. REILLY, ESQ.
by Counsel

/s/ Craig C. Reilly
By: Craig C. Reilly
VSB #20942
LAW OFFICES OF CRAIG C. REILLY, ESQ.
209 Madison Street, Suite 501
Alexandria, Virginia 22314
craig.reilly@ccreillylaw.com
Phone: 703-549-5354
Fax: 703-549-5355

*Of counsel:*
Brian N. Platt (*pro hac vice* to be filed)
Utah State Bar No. 17099
Kenneth J. Dyer (*pro hac vice* to be filed)
Cal. State Bar No. 191192
WORKMAN NYDEGGER
60 East South Temple Suite 1000
Salt Lake City, Utah 84111
Phone: (801) 533-9800
Fax: (801) 328-1707
bplatt@wnlaw.com
kdyer@wnlaw.com

*Attorneys for Guizhou Wei Shi Ke Ji You Xian Gong Si ("GWSK") dba Kovize*