**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| THOUSAND OAKS BARREL CO., LLC, a Virginia limited liability company,<br><br>    Plaintiff,<br><br>    v.<br><br>THE PARTNERSHIPS, COMPANIES, and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A,<br><br>    Defendants. | Case No. 1:23-cv-01563-MSN-LRV |

**DEFENDANT GWSK'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS
PURSUANT TO FED. R. CIV. P. 12(b)(2), (4) & (5)**

In response to the motion to dismiss (Doc. 103) for lack of personal jurisdiction, insufficient process, and insufficient service of process filed by Defendant No. 59, Guizhou Wei Shi Ke Ji You Xian Gong Si (Amazon shop name "KOVIZE") ("GWSK"), Plaintiff, Thousand Oaks Barrell Co., LLC ("TOB"), admits that "[GWSK] has not been served with a summons" as required by Rule 4. (Doc. 145, *TOB Opp.* at 1.) Even while contending that GWSK's motion to dismiss should be denied because the 90-day period for service of process has not yet elapsed, TOB asks the Court to "*grant leave for [TOB] to file a new case with an Amended Complaint against GWSK as the sole defendant.*" (*Id*. at 2 (emphasis added).) Respectfully, the Court should treat TOB's opposition as a motion for voluntary dismissal, without prejudice, as against GWSK, and the Court should dismiss the action as to GWSK on that basis. The Court may then deny

GWSK's motion to dismiss as moot. If it be so advised, TOB may then file a "new case … against GWSK as the sole defendant" based on the allegations made in TOB's draft Amended Complaint (Doc. 145-1). That would necessarily be an entirely "new case" because it drops 160 other defendants, drops the meritless trade dress count, and accuses an entirely different product of infringing TOB's U.S. Patent No. 11,744,256 B2 ("the '256 Patent").

## REPLY ARGUMENT

### I. "SERVICE OF PROCESS" REQUIRES ISSUANCE AND SERVICE OF A SUMMONS.

Rule 4 requires "service of *process*" to give notice to a defendant and to obtain personal jurisdiction over him. The initiating "process" in a civil act is the summons: "Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of *service of summons* must be satisfied." *Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987) (emphasis added). "'[S]ervice of summons is the procedure by which a court having venue and jurisdiction of the subject matter of the suit asserts jurisdiction over the person of the party served.'" *Id.* (quoting *Mississippi Publishing Corp. v. Murphree*, 326 U.S. 438, 444-45 (1946)). "Thus, before a court may exercise personal jurisdiction over a defendant, there must be more than notice to the defendant and a constitutionally sufficient relationship between the defendant and the forum. There also must be a basis for the defendant's amenability to *service of summons*." *Id.* (emphasis added). Specifically, "the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action." *Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 351 (1999). And it is a "bedrock principle" of due process that an "entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Id.* at 347. TOB simply ignores this.

2

Significantly, mere delivery of the complaint to a defendant, "unattended by any formal service," is wholly ineffective because "one becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* at 348, 350 (faxing complaint without summons does not satisfy Rule 4 service of process). By neglecting to have a summons issued by the Clerk and served as specified by the rules, TOB has failed to serve process on GWSK—and every other defendant—and has failed to invoke the Court's personal jurisdiction over GWSK—and every other defendant.[1]

Accordingly, TOB has the rule backwards when it describes GWSK motion: "GWSK's sole accusation in its motion is that it was not properly served the complaint in this action with an accompanying summons." (Doc. 145, *TOB Br. Opp*. at 1.) Rather, Rule 4 requires that the "[a] summons must be served with a copy of the complaint." Fed. R. Civ. P. 4(c)(1). Thus, the *original* summons, issued by the Clerk, is the "process" that must be served on GWSK together with an accompanying "*copy* of the complaint."

Therefore, at the very least, the Court should quash the admittedly deficient email service attempted by TOB on GWSK. But even if TOB were to cure the service deficiency, that is just one of the fundamental problems in this case, of which three others are outlined in **Section II**.

---

[1] Although not at issue in this motion, GWSK notes that even though a TRO may be issued prior to "service of process" under Rule 4, a preliminary injunction may not. *3M Co. v. Christian Inv. LLC*, No. 1:11-cv-627-TSE-JFA, 2011 U.S. Dist. LEXIS 93347, 2011 WL 3678144 (E.D. Va. Aug. 19, 2011).

## II. THE ASSERTED PATENT IS INVALID, DEFENDANTS HAVE BEEN MISJOINED, AND CLAIM CONSTRUCTION HAS BEEN INCONSISTENTLY APPLIED.

This action has more problems than a porcupine has quills—and each is just as prickly.

*Background:*  A British company known as "Soak Limited" apparently devised what is known as the "Foghat Cocktail Smoker," and it owns United States design and utility patents for its product.  TOB alleges that it is the "exclusive licensee" of those design and utility patents.  Thus armed, TOB has embarked on a carpet-bombing litigation campaign in the United States asserting those patents to wipe out its online competition in the crowded and widely practiced field of cocktail smoker products.  In just *three* lawsuits,[2] TOB has (i) sued *over 300 online retailers* who offer hundreds of competing products, (ii) frozen their online accounts through *ex parte* TROs obtained on specious grounds, and (iii) coerced many of those online retailers to sublicense the invalid '256 Patent.

In addition to lack of service of process, there are three fundamental and fatal problems with this case: (1) the '256 Patent is indisputably invalid; (2) 161 defendants were joined in this action in violation of 35 U.S.C. § 299; and (3) many of the accused products, including GWSK's products, have structures that could not possibly infringe the '256 Patent claims, as properly and uniformly construed, even assuming the patent is valid (which it is not).

*Invalidity:*  The application for the '256 Patent was filed on November 20, 2020.  (Doc. 1-3, '256 Patent, Page 1.)  The '256 Patent was issued as a utility patent on September 5, 2023.  (*Id.*)

---

2  *See TOB LLC v. Schedule A*, No. 1:23-cv-3378 (N.D. Ill. filed May 30, 2023) (asserting design patent against 130 online retailers); *Thousand Oaks Barrell, LLC v. Schedule A*, No. 1:23-cv-1560-MSN-LRV (E.D. Va. filed Nov. 15, 2023) (asserting design patent against 50 online retailers); and *Thousand Oaks Barrell, LLC v. Schedule A*, No. 1:23-cv-1563-MSN-LRV (E.D. Va. filed Nov. 16, 2023) (asserting '256 Patent against 161 online retailers).

The '256 Patent is invalid for at least two indisputable reasons: First, products embodying all elements of the claimed invention were publicly displayed and available for use as early as July 2019, more than a year before the application date. (Doc. 76, *Platt Declaration*, ¶¶ 4-16 and associated exhibits.) Therefore, the '256 Patent is invalid under 35 U.S.C. § 102(a). Second, certain of those public displays and uses were made by the patentee itself more than a year before the application date. (*Id.* ¶¶ 10-13 and associated exhibits.) Therefore, the '256 Patent is also invalid under 35 U.S.C. § 102(b).

These indisputable facts were raised by GWSK when seeking to dissolve the TRO entered against it. (Doc. 74 – 76.) Rather than contest GWSK's motion on the merits, TOB tried to sweep the question of invalidity under the rug by consenting to dissolve the TRO as against GWSK. (Doc. 85 & 87.) TOB's avoidance of the merits, which in this instance allows it to hide behind the presumption of validity, is a pattern in this action.

Previously, Defendant No. 11, Digital Distillery, LLC (*dba* "Aged & Charred"), moved to dissolve the TRO after demonstrating that its product bears no resemblance to the accused product identified by TOB in the Complaint and TRO motion and did not infringe the '256 Patent claims as properly construed. (Doc. 17 – 21.) Rather than engage in claim construction against Digital Distillery, LLC, TOB agreed to sever the claims against Digital Distillery, LLC and have them transferred to the Western District of Missouri. (Doc. 23 & 24.) Still seeking to avoid litigation of the merits, TOB has now voluntarily dismissed the claims against Digital Distillery, LLC. *Thousand Oaks Barrell, LLC v. Schedule A*, No. 4:23-cv-00904-DGK (W.D. Mo. Jan. 18, 2024) (Doc. 38). This then segues to the next fundamental flaw, misjoinder.

*Misjoinder:* In 2011, the America Invents Act enacted certain restrictions on joinder of accused infringers "in any civil action arising under any Act of Congress relating to patents." 35 U.S.C. § 299(a). Essentially, "accused infringers may be joined in one action … *only if*" they are potentially liable for infringement "jointly," "severally," or are accused of infringement based on making, using, selling, or offering for sale "*the same accused product* or process." 35 U.S.C. § 299(a)(1) (emphasis added). Here, TOB tried to invoke the "same accused product" exception by recklessly alleging that a single China-based manufacturer made the accused products for all 161 defendants, and that the product offered by Defendant No. 68 was an "exemplar" of *all* the over-200 accused products. (Doc. 1, *Complaint*, ¶¶ 18, 28-31.) That contention is wholly fallacious, which a diligent pre-filing investigation would have uncovered.[3]

Despite making the conclusory allegation that it had "conducted a detailed analysis, establishing and confirming that Defendants' Accused Products directly infringe claims of the '256 Patent" (Doc. 1, *Complaint*, ¶ 25), TOB was later forced to admit that its basis for joinder under § 299 was baseless: "On the whole, the Defendants in this case do not sell the same infringing products. There are three general configurations from a utility patent perspective and a number of different configurations from a design patent perspective." (Doc. 59, *TOB Scheduling Brief*, at 4.) TOB then finally conceded that "[c]ontinued joinder is not appropriate in this matter, as not all accused infringers sell the same product." (*Id.*) Nonetheless, TOB argued that there should be no

---

[3] In a case like this, involving an inexpensive off-the-shelf consumer product, the Rule 11 duty of a pre-filing investigation generally requires that the patentee obtain a sample of each accused product and compare its structure to the patent claims. *See Judin v. United States*, 110 F.3d 780 (Fed. Cir. 1997) (imposing Rule 11 sanctions).

6

consequences for its reckless misjoinder and its fallacious representations to the Court that the "exemplar" product was representative of all accused products sold by all accused infringers.

Moreover, TOB argued that the TRO should remain in place even as to the numerous accused infringers (including GWSK) whose products had not been analyzed for infringement in the TRO motion. Instead, TOB argued that it should be allowed to continue to strongarm licenses from the online retailers it has taken hostage by having their Amazon accounts frozen by an *ex parte* TRO. (*Id*.) That is unjust.

The misjoined defendants are caught between a rock (frozen assets) and a hard place (being forced to take a license under an invalid patent). It is certain that none is taking a license because it is a repentant infringer. Rather, all these small, online retailers are taking a license to unfreeze their assets and to avoid the "the expense of defending a patent suit [that] is often staggering to the small businessman." *Blonder-Tongue v. University Foundation*, 402 U.S. 313, 334 (1971) (citation omitted). As the Supreme Court has recognized, a small businessman may negotiate a license "from a patentee who was threatening him with a suit [simply to avoid] 'the necessity of defending an expensive infringement action during the period when he may be least able to afford one.'" *Id*. (citation omitted). This painful decision, while rational to the individual defendant, is inimical to fair competition as a whole. Thus, courts must guard against "the opportunities for holders of invalid patents to exact licensing agreements or other settlements from alleged infringers." *Id*. at 342. This is just such an occasion.

***Claim Construction:*** By dismissing or transferring (or both) any defendants who are fighting back, like Digital Distillery, LLC, TOB also is avoiding a contested claim construction hearing. Despite conceding that there are *three* fundamentally different configurations—and

despite ignoring other structural differences that may be outcome determinative in an infringement analysis of the over-200 products at issue—TOB purports apply the '256 Patent limitations to *all* accused structures. (*See* Doc. 67, *TOB PI Brief*, Revised Schedule A, and three claim charts.) Even a cursory review of the three claim charts reveals that TOB is adopting different definitions of its claims to fit the differently configured accused products.

For example, the claimed "floor," which is an external element "defining the bottom end" of the "base," and which is "sized to rest upon the uppermost portion" of the glass ('256 Patent, Claim 1, col. 6, ln.21-22, 33-35; Fig. 3, item **112**; Fig. 8, item **112**), becomes part of the separate "fuel chamber" element in two claim charts (Doc. 67-2, Page 2, and 67-4, Page 2), and in the third claim chart, what should be the "floor" ('256 Patent, Fig. 3, item **112**) is relabeled as the "conduit portion" (Doc. 67-3, Page 144), while in another depiction, the *top* of the "base" is labeled as the "floor," *not* "the bottom end" of the "base" that would "rest upon" the glass (Doc. 67-3, Page 2). TOB's claim construction and application of claim language to the various accused products is anything but uniform.

Similarly, the "conduit portion disposed below the floor" ('256 Patent, Fig. 3, item **108**), is described as containing an "open channel at the first end and *closed at a second end*" (*Id*., col. 1, ln.52-54 (emphasis added); Fig. 5C, item **108**, showing "closed" "second end" in cross-section), with an "aperture that extends from the channel through an *outerwall* of the conduit portion" (*Id*., col. 1, ln.55-57 (emphasis added); Fig. 3, item **114**). The claimed "conduit portion" "disposed from the floor," containing a "channel" having a "closed end," and one or more "apertures" extending "through an outerwall of the conduit portion," as claimed in the patent is found (if at all) only in one claim chart (Doc. 67-2, Page 2), and not at all in the other claim charts. In the other

8

two claim charts, the alleged "channel" is "open" at *both* "ends" and has *no* claimed "apertures" (Doc. 67-3 and 67-4).[4]  Plainly, TOB is taking mutually inconsistent claim construction positions to try to show infringement by (at least) three differently configured accused products.

Thus, TOB is committing the cardinal sin of claim construction:  The patentee may not treat a patent claim "like a nose of wax which may be turned and twisted in any direction, by merely referring to the specification, so as to make it include something more than, or something different from, what its words express." *White v. Dunbar*, 119 U.S. 47, 51 (1886).  The claim construction process, which TOB has assiduously avoided, is designed to render a single, definitive, and uniformly applied meaning for each patent claim.  *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 390 (1996).  Knowing that it will not receive any claim construction challenge from the hostage online retailers, TOB has felt free to assert inconsistent claim constructions against them, like the proverbial "nose of wax."

### III. THIS ACTION SHOULD BE DISMISSED AS TO GWSK AND TOB MAY THEN FILE A "NEW CASE."

TOB has asked the Court to "grant leave for [TOB] to file a new case with an Amended Complaint against GWSK as the sole defendant."  (Doc. 145, *TOB Opp.* at 2.)  The proposed Amended Complaint (Doc. 145-1) would necessarily be an entirely "new case" because it drops 160 other defendants, drops the meritless trade dress count, and accuses an entirely different product (GWSK's product) of infringing TOB's '256 Patent than the originally accused product

---

[4]  An "open" "second end" at the bottom of the "channel" cannot be an "aperture" because "apertures may be oriented as *horizontal* channels through [the "outerwall" of the] conduit portion **118**" or "may be oriented with *rising angles* of the channel towards the floor **112** opening in [the] fuel chamber portion"—that is, *upwards*.  ('256 Patent, col. 5, ln.11-15 (emphasis added).)  The claimed "apertures" are not "oriented" *downwards*, which is how the open "end" of the "channel" is "oriented" in two of the three accused configurations.  (Doc. 67-3 and 67-4.)

(Defendant No. 68's product). Respectfully, the Court should treat TOB's opposition as a motion for voluntary dismissal, without prejudice, as against GWSK, which should be granted; if that is done, the Court may deny GWSK's motion to dismiss as moot. Then, if it be so advised, TOB may file a "new case … against GWSK as the sole defendant" based on the allegations made in TOB's draft Amended Complaint.

## CONCLUSION

For the reasons argued above, the Court should (at least) quash the email service attempted by TOB. Alternatively, the Court should dismiss this action as against GWSK, without prejudice, and allow TOB to file a "new case" solely against GWSK as TOB has requested.

DATED: January 23, 2024.                    Respectfully submitted,

/s/ Craig C. Reilly
By: Craig C. Reilly
VSB #20942
LAW OFFICES OF CRAIG C. REILLY, ESQ.
209 Madison Street, Suite 501
Alexandria, Virginia 22314
craig.reilly@ccreillylaw.com
Phone: 703-549-5354
Fax: 703-549-5355

*Of counsel:*
Brian N. Platt (*pro hac vice* to be filed)
Utah State Bar No. 17099
Kenneth J. Dyer (*pro hac vice* to be filed)
Cal. State Bar No. 191192
WORKMAN NYDEGGER
60 East South Temple Suite 1000
Salt Lake City, Utah 84111
(801) 533-9800 (main line)
(801) 328-1707 (facsimile)
bplatt@wnlaw.com

*Attorneys for GWSK*